JOHN T. O'CONNELL (SBN 10715)+
O'CONNELL & ASSOCIATES
1003 Bishop St., Suite 2700
Honolulu, HI 96813
Tel: (808) 800-0050
E-mail: oconnell@jtoclaw.com

JOHN R. HILLSMAN (Pro Hac Vice)
ABRAHAM FEINSTEIN HILLSMAN (Pro Hac Vice)
McGUINN, HILLSMAN & PALEFSKY
220 Jackson Street, Suite 350
San Francisco, CA 94111
Tel: (415) 421-9292
E-mail: jrhillsman@mhpsf.com
       bfh@mhpsf.com

Attorneys for the Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| +MARSHALL CARMACK,<br><br>  Plaintiff,<br>vs.<br><br>AMERICAN WORKBOATS, INC.<br>and AMERICAN MARINE<br>CORPORATION,<br><br>  Defendants.<br>_____ | ) Case No. 1:23-cv-00345 JMS-WRP<br>)<br>) **PLAINTIFF'S RESPONSE TO**<br>) **DEFENDANT'S SEPARATE AND**<br>) **CONCISE STATEMENT OF**<br>) **MATERIAL FACTS IN SUPPORT**<br>) **OF MOTION FOR PARTIAL**<br>) **SUMMARY JUDGMENT**<br>)<br>) Date: April 14, 2025<br>) Time: 10:00 a.m.<br><br>   Trial: July 8, 2025 |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S SEPARATE AND CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

1

|   | STATEMENT OF FACT | PLAINTIFF'S RESPONSE |
|---|---|---|
| 1 | The contract for the repair of the Maalaea Harbor was awarded to AMC by the State of Hawaii. | Admits. |
| 2 | AMC was generally responsible for demolition work, site preparation, precast concrete pile installation, fabrication and installation of 17 aluminum framed finger piers.(the "Project"). | Admits. |
| 3 | The Project involved work both on land and over water. | Admits. |
| 4 | The barge AWB 82 was outfitted with a landside CAT 329 ("Excavator") and was used to drill and install piles which required the use of augers to drill holes before the piles were installed. | Admits. |
| 5 | The Project involved heavy civil construction similar to AMC's land-side projects. | **Denies.** *Carmack Decl.*") at Pars. 26, 27, 28, 29, 30, 31, 32, 33, 36, 36, and 37; *Exhibits 1, 2, 3, 5A, 5B, 6, 7, 8, 14, 15, 16.* |

2

|   | STATEMENT OF FACT | PLAINTIFF'S RESPONSE |
|---|---|---|
| 6 | AMC's construction crew, including Mr. Carmack, used the same tools and equipment which are common to land-based construction work. | **Denies**.<br><br>*Carmack Decl.* at Pars. 3, 4, 5, 6, 7, 8, 9, 11, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 26, 27, 28, 29, 30, 31, 32, 33, 36, 36, and 37; *Exhibits 1, 2, 3, 5A, 5B, 6, 7, 8, 9, 10, 11, 13, 14, 15,* and *16*. |
| 7 | Carmack began working for AMC in June 2003 as a laborer at the age of 18. | Admits. |
| 8 | He joined Operating Engineers Local 3 in about 2008 and, with the exception of occasional layoffs due to lack of work, Plaintiff remained employed by AMC over the next 15 years. | Admits. |
| 9 | Carmack's working background with AMC has been focused on construction work. | **Denies.**<br><br>*Carmack Decl.* at Pars. 3, 4, 5, 6, 7, 8, 9, 10, 11, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 26, 27, 28, 29, 30, 31, 32, 33, 36, 36, and 37; *Exhibits 1, 2, 3, 4, 5A, 5B, 6, 7, 8, 9, 10, 11, 13, 14, 15,* and *16*. |
| 10 | Carmack never belonged to a maritime union and never obtained a Coast Guard license. | Admits he never obtained a Coast Guard license.<br><br>**Denies he never belonged to a** |

3

|    | **STATEMENT OF FACT** | **PLAINTIFF'S RESPONSE** |
|----|---|---|
|    |   | "maritime union." |
|    |   | *Carmack Decl.* at Pars. 1, 2, 3, 4, 5, 6, 7, 8, 9, and 10; *Exhibits 1, 2, 3, 4, 5A, 5B, 6, 7, 8, 9, 10, 11, 13, 14, 15,* and *16.* |
| 11 | Like most of Carmack's in-harbor construction work, he served as a construction hand on the Project. | **Denies**. *Carmack Decl.* at Pars. 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 26, 27, 28, 29, 30, 31, 32, 33, 36, 36, and 37; *Exhibits 1, 2, 3, 4, 5A, 5B, 6, 7, 8, 9, 10, 11, 13, 14, 15,* and *16.* |
| 12 | The purpose of the AWB 82 was to drill and install pile and Carmack's primary role was to perform construction work. | **Denies.** *Carmack Decl.* at Pars. 3, 4, 5, 6, 7, 8, 9, 10, 11, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 26, 27, 28, 29, 30, 31, 32, 33, 36, 36, and 37; *Exhibits 1, 2, 3, 5A, 5B, 6, 7, 8, 9, 10, 11, 13, 14, 15,* and *16.* |
| 13 | Carmack worked on the stationary barge where the Excavator was being used. | **Denies.** *Carmack Decl.* at Pars. 3, 4, 5, 6, 7, 8, 9, 20 , 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 26, 27, 28, 29, 30, 31, 32, 33, 36, 36, and 37; Exhibits 1, 2, 3, 5A, 5B, 6, 7, 8, 9, 10, 11, 13, 14, 15, and 16. |
| 14 | The AWB 82 served as the platform for the pile placement | **Denies**. |

4

|    | STATEMENT OF FACT | PLAINTIFF'S RESPONSE |
|----|-------------------|---------------------|
|    | work on the Project. | *Carmack Decl.* at Pars. 3, 4, 5, 6, 7, 8, 9, 10, 11, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 26, 27, 28, 29, 30, 31, 32, 33, 36, 36, and 37; *Exhibits 1, 2, 3, 5A, 5B, 6, 7, 8, 9, 10, 11, 13, 14, 15,* and *16.* |
| 15 | At times, Carmack helped move the AWB 82 to reposition it for pile placement. | Admits. |
| 16 | The only difference between the land-based jobs and the Project was the location. | **Denies.** *Carmack Decl.* at Pars. 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 26, 27, 28, 29, 30, 31, 32, 33, 36, 36, and 37; *Exhibits 1, 2, 3, 4, 5A, 5B, 6, 7, 8, 9, 10, 11, 13, 14, 15,* and *16.* |
| 17 | Similar to land-based construction, each night Carmack was able to return to a home. | Admits he never slept aboard AMC's vessels. **Denies his vessel-based work was similar to land-based construction.**. *Carmack Decl.* at Pars. 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 26, 27, 28, 29, 30, 31, 32, 33, 36, 36, and 37; *Exhibits 1, 2, 3, 4, 5A, 5B, 6, 7, 8, 9, 10, 11, 13, 14, 15,* and *16.* |
| 18 | Carmack did not have to endure | Admits he did not have to sleep in a |

5

|    | STATEMENT OF FACT | PLAINTIFF'S RESPONSE |
|----|-------------------|----------------------|
|    | nights at sea in the small bunk of a crew quarters and was not forced to ride out a storm if the weather turned. | small bunk aboard AMC's vessels. **Denies he was not exposed to the perils of the sea.** *Carmack Decl.* at Pars. 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 26, 27, 28, 29, 30, 31, 32, 33, 36, 36, and 37; *Exhibits 1, 2, 3, 4, 5A, 5B, 6, 7, 8, 9, 10, 11, 13, 14, 15, 16.* |
| 19 | The AWB 82 was in a protected location and did not experience "boarding waves" or have to move to seek shelter in a storm. | **Denies.** *Carmack Decl.* at Pars. 5, 7, 8, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 26, 27, 28, 29, 30, 31, 32, 33, 36, 36, and 37; *Exhibits 1, 2, 3, 5A, 5B, 6, 7, 8, 9, 12, 14, 15,* and *16.* |
| 20 | Neither Carmack, nor any of the other members of the construction crew were required to have a Z-card, merchant mariner experience, blue water experience or Coast Guard license to work on the Project. | Admits he was not required to have a Z-cards. **Denies he was not required to have blue-water experience.** *Carmack Decl.* at Pars. 5, 7, 8, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 26, 27, 28, 29, 30, 31, 32, 33, 36, 36, and 37; *Exhibits 1, 2, 3, 5A, 5B, 6, 7, 8, 9, 12, 14, 15,* and *16.* |

6

|    | STATEMENT OF FACT | PLAINTIFF'S RESPONSE |
|----|-------------------|----------------------|
| 21 | Carmack's contractual relationship with AMC was governed by a collective bargaining agreement with his union –he did not sign seaman's articles as a condition of employment. | Admits. |
| 22 | While Carmack occasionally handled lines, line handling is a regular task performed by longshoremen and marine construction hands. | **Denies he handled lines only occasionally.**<br><br>*Carmack Decl.* at Pars. 5, 7, 8, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 26, 27, 28, 29, 30, 31, 32, 33, 36, 36, and 37; *Exhibits 1, 2, 3, 5A, 5B, 6, 7, 8, 9, 12, 14, 15,* and *16.* |
| 23 | Line handling on a construction barge is merely incidental to the construction work. | **Denies.**<br><br>*Carmack Decl.* at Pars. 5, 7, 8, 9, 10, 19, and 25; *Exhibits 1, 2, 3, 4, 5A, 5B, 10,* and *14.* |
| 24 | Carmack was assigned to the Project, but not to a specific vessel or as a member of the crew of any vessel on the Project. | **Denies.**<br><br>*Carmack Decl.* at Pars. 5, 7, 8, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 26, 27, 28, 29, 30, 31, 32, 33, 36, 36, and 37; *Exhibits 1, 2, 3, 5A, 5B, 6, 7, 8, 9, 12, 14, 15,* and *16.* |

|    | **STATEMENT OF FACT** | **PLAINTIFF'S RESPONSE** |
|----|----------------------|--------------------------|
| 25 | His assignment to the Project was simply to perform construction work. | **Denies.** <br><br> *Carmack Decl.* at Pars. 3, 4, 5, 7, 8, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 26, 27, 28, 29, 30, 31, 32, 33, 36, 36, and 37; *Exhibits 1, 2, 3, 5A, 5B, 6, 7, 8, 9, 12, 14, 15,* and *16.* |
| 26 | Furthermore, when working for AMC, Carmack was assigned to a project, not a vessel. | **Denies.** <br><br> *Carmack Decl.* at Pars. 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 26, 27, 28, 29, 30, 31, 32, 33, 36, 36, and 37; *Exhibits 1, 2, 3, 5A, 5B, 6, 7, 8, 9, 12, 14, 15,* and *16.* |
| 27 | The *AWB 82* is a barge measuring approximately 82 feet long and 26 feet wide, it is not classed by ABS or inspected by the U.S. Coast Guard and therefore cannot be used as an ocean-going vessel with passengers or crew. | Admits the *AWB 82's* dimensions. <br><br> Admits the *AWB 82* is not an "inspected vessel." <br><br> **Denies the *AWB 82* cannot be used to transport crew and equipment over ocean waters.** <br><br> *Carmack Decl.* at Pars. 7, 10, 11, and 13; *Exhibits 1, 2, 3, 5A,* and *5B* |

8

|    | **STATEMENT OF FACT** | **PLAINTIFF'S RESPONSE** |
|----|------------------------|---------------------------|
| 28 | AMC's construction crew drilled and installed the pile from the work platform, the *AWB 82*. | **Denies**.<br><br>*Carmack Decl.* at Pars. 3, 4, 5, 6, 7, 8, 9, 10, 11, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 26, 27, 28, 29, 30, 31, 32, 33, 36, 36, and 37; *Exhibits 1, 2, 3, 5A, 5B, 6, 7, 8, 9, 12, 14, 15,* and *16*. |
| 29 | It also stored AMC's land-based equipment such as hammer, drill rigs, augers and the Excavator. | **Denies**.<br><br>*Carmack Decl.* at Pars. 3, 4, 5, 6, 7, 8, 9, 10, 11, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 26, 27, 28, 29, 30, 31, 32, 33, 36, 36, and 37; *Exhibits 1, 2, 3, 5A, 5B, 6, 7, 8, 9, 12, 14, 15,* and *16*. |
| 30 | The AWB 82 remained on the construction site fixed in place by a system of *spuds* throughout the Project. | **Denies**.<br><br>*Carmack Decl.* at Pars. 3, 4, 5, 6, 7, 8, 9, 10, 11, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 26, 27, 28, 29, 30, 31, 32, 33, 36, 36, and 37; *Exhibits 1, 2, 3, 5A, 5B, 6, 7, 8, 9, 12, 14, 15,* and *16*. |
| 31 | The only transportation provided by the *AWB 82* was incidental to re-positioning the barge for continuing work operations. | **Denies.**<br><br>*Carmack Decl.* at Pars. 3, 4, 5, 6, 7, 8, 9, 10, 11, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 26, 27, 28, 29, 30, 31, 32, 33, 36, 36, and 37; *Exhibits 1, 2, 3, 5A, 5B, 6, 7, 8, 9, 12, 14, 15,* and *16*. |

9

|    | **STATEMENT OF FACT** | **PLAINTIFF'S RESPONSE** |
|----|----|----|
| 32 | Land was always easily accessible because the AWB 82 was usually at most in the range of 200 yards +/- from shore or the dock. | **Denies**.<br><br>*Carmack Decl.* at Pars. 5, 6, 7, 8, 9, 10, and 11; *Exhibits 1, 2, 3, 14,* and *16*. |
| 33 | Carmack and the rest of AMC's construction crew, were not exposed to the same perils created by storms, heavy weather, sinking of the vessel, fires, drowning, or the perils to which seamen are exposed on vessels miles from shore. | **Denies.**<br><br>*Carmack Decl.* at Pars. 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 26, 27, 28, 29, 30, 31, 32, 33, 36, 36, and 37; *Exhibits 1, 2, 3, 4, 5A, 5B, 6, 7, 8, 9, 12, 14, 15,* and *16*. |
| 34 | During this Project, *land-based assistance was immediately accessible.* | **Denies**.<br><br>*Carmack Decl.* at Pars. 5, 6, 8, 9, 10, 12, 29, 30, 31, and 32; *Exhibit 15*. |
| 35 | Plaintiff alleges, he was injured . . serving as a marine-construction hand aboard the . . . AWB 82…. | **Denies.**<br><br>*Carmack Decl.* at Pars. 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 26, 27, 28, 29, 30, 31, 32, 33, 36, 36, and 37; *Exhibits 1, 2, 3, 4, 5A, 5B, 6, 7, 8, 9, 12, 14, 15,* and *16*. |
| 36 | AMC's records confirm plaintiff's work during his employment because his hours are recorded regularly to ensure accurate billing and payroll. | **Objects under Fed. R. Evid. 602 and 803(6) and Fed. R. Civ. P. 56(e).** |

10

|    | STATEMENT OF FACT | PLAINTIFF'S RESPONSE |
|----|-------------------|----------------------|
|    |                   |                      |
| 37 | Employees' work hours are tracked by project, job cost number and/or general ledger account number. | **Objects under Fed. R. Evid. 602 and 803(6) and Fed. R. Civ. P. 56(e).** |
| 38 | Each week, the hours are reviewed for accuracy by an administrative assistant, then by AMC's company manager. | **Objects under Fed. R. Evid. 602 and 803(6) and Fed. R. Civ. P. 56(e).** |
| 39 | That information is transferred into AMC's electronic "Sage" accounting program/system to process and track payroll. | **Objects under Fed. R. Evid. 602 and 803(6) and Fed. R. Civ. P. 56(e)..** |
| 40 | Sage is a comprehensive business management accounting platform | **Objects under Fed. R. Evid. 602 and 803(6) and Fed. R. Civ. P. 56(e).** |
| 41 | The accounting data accurately reflects work performed by each employee on land and marine jobs and is AMC's official payroll record. | **Objects under Fed. R. Evid. 602 and 803(6) and Fed. R. Civ. P. 56(e)..** |
| 42 | AMC's Vice President personally reviewed the Sage records concerning the plaintiff's work to calculate the percentages of time the plaintiff spent working on land and marine work from 2003 through the date of his accident. | **Objects under Fed. R. Evid. 602 and 803(6) and Fed. R. Civ. P. 56(e).** |

|    | **STATEMENT OF FACT** | **PLAINTIFF'S RESPONSE** |
|----|----------------------|--------------------------|
| 43 | That analysis covers the plaintiff's entire employment with AMC and determined that the plaintiff only spent 28% of his time on projects in which he may have been in the service of AMC's vessels or barges away from a dock or pier and/or underway. | **Denies**.<br><br>*Carmack Decl.* at Pars. 3 and 9. |
| 44 | Mr. Carmack's records show that he worked a total of 37,526 hours from 2003 through the 2022 incident date. Of that, 8,803 hours were spent "On Land Maintenance" or 23.45% of his time; 8,697.5 hours were spent "On Land Construction" or 23.17% of his time; 2,112 hours spent "Tied to Dock Maintenance" or 5.62% of his time; 884.5 hours spent "Tied to Dock Construction" or 2.35% of his time; 8,285 hours spent "In Harbor Dredging Work" or 22.07% of his time; 6,538 hours spent "In Harbor Construction Work" or 17.42% of his time; and 2,206 hours spent "Offshore Dredging Work", or 5.87% of his time. | **Objects under Fed. R. Evid. 602 and 803(6) and Fed. R. Civ. P. 56(e).**. |

12

|    | **STATEMENT OF FACT** | **PLAINTIFF'S RESPONSE** |
|----|----|----|
| 45 | Of these categories, only "In Harbor Dredging Work" and "Offshore Dredging Work" could arguably be considered traditional seamen's work. | **Denies.**<br><br>*Carmack Decl.* at Pars. 3, 4, 5, 6, 7, 8, 9, 10, 11, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 26, 27, 28, 29, 30, 31, 32, 33, 36, 36, and 37; *Exhibits 1, 2, 3, 5A, 5B, 6, 7, 8, 9, 12, 14, 15,* and *16.* |
| 46 | "On Land Maintenance" generally consists of painting, chipping, other general on-land maintenance jobs. | **Denies.**<br><br>*Carmack Decl.* at Pars. 3, 4, 5, 6, 7, 8, 9, 10, 11, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 26, 27, 28, 29, 30, 31, 32, 33, 36, 36, and 37; *Exhibits 1, 2, 3, 5A, 5B, 6, 7, 8, 9, 12, 14, 15,* and *16.* |
| 47 | "On Land Construction" consists of "on-land" construction projects. | **Denies.**<br><br>*Carmack Decl.* at Pars. 3, 4, 5, 6, 7, 8, 9, 10, 11, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 26, 27, 28, 29, 30, 31, 32, 33, 36, 36, and 37; *Exhibits 1, 2, 3, 5A, 5B, 6, 7, 8, 9, 12, 14, 15,* and *16.* |
| 48 | "Tied to Dock Maintenance" consists of work such as chipping, painting, repair and general maintenance for barges when not involved on a specific project. | **Denies.**<br><br>*Carmack Decl.* at Pars. 3, 4, 5, 6, 7, 8, 9, 10, 11, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 26, 27, 28, 29, 30, 31, 32, 33, 36, 36, and 37; *Exhibits 1, 2, 3, 5A, 5B, 6, 7, 8, 9, 12, 14, 15,* and *16.* |

|    | STATEMENT OF FACT | PLAINTIFF'S RESPONSE |
|---|---|---|
| 49 | "Tied to Dock Construction" consists generally of construction when a platform or barge is tied to a dock with construction being performed from the platform. | **Denies.**<br><br>*Carmack Decl.* at Pars. 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 26, 27, 28, 29, 30, 31, 32, 33, 36, 36, and 37; *Exhibits 1, 2, 3, 4, 5A, 5B, 6, 7, 8, 9, 12, 14, 15,* and *16*. |
| 50 | "In Harbor Construction" consists of work from a barge or platform that is anchored or spudded in a harbor but with the construction crew not being subject to the perils of the sea or performing usual seaman's duties—again, simply construction work from a platform close to land. | **Denies.**<br><br>*Carmack Decl.* at Pars. 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 26, 27, 28, 29, 30, 31, 32, 33, 36, 36, and 37; *Exhibits 1, 2, 3, 4, 5A, 5B, 6, 7, 8, 9, 12, 14, 15,* and *16*. |

## CERTIFICATE OF COMPLIANCE

Plaintiff Marshall Carmack's Response to the Concise Statement Defendant AMC offered in Support of its Motion for Partial Summary Judgment contains 1,835 words and does not comply with the word limit set forth in L.R. 56.1(c) because AMC's 50 Statements of Fact were often compound and ran 8 pages, such that Plaintiff could not satisfy the requirements of L.R. 56.1(e) in only 1,500 words.

Dated: San Francisco, California, March 24, 2025

                      McGUINN, HILLSMAN & PALEFSKY

                      By: /s/   JOHN R. HILLSMAN
                              JOHN R. HILLSMAN

                      Attorney for Plaintiff Marshall Carmack